CHARLOTTE MINERVA, The (ENEAS v.).
  See Case No. 4,483.

----

## Case No. 2,622.

### The CHARLOTTE RAAB.

[Brown, Adm. 453.] [1]

District Court, E. D. Michigan.  July, 1873.

COLLISION—VESSEL IN STAYS—BURDEN OF PROOF.

1. If an injured vessel is shown to have been in stays at the time of the collision, the burden

----

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

of proof is upon the colliding vessel to show that she was not in fault.

[Distinguished in The F. W. Gifford, Case No. 5,166; The James Bowen, Id. 7,192.]

2. The master of a vessel approaching another while in stays, has no right to speculate upon the chances of her coming completely about, getting under headway and avoiding him.]

[Cited in The Clytie, Case No. 2,913.]

This was a libel for a collision in the straits of Mackinac, between the schooner Charles Wall, of 691 tons, and the Charlotte Raab, a small three-masted schooner. The collision occurred about ten o'clock in the evening. The night was dark and somewhat cloudy, but not foggy, and the outlines of either vessel could be seen from the other at some distance. For an hour before the collision, both vessels had been sailing upon a course northeast by north, close-hauled upon the starboard tack, the Raab being about three points upon the weather quarter of the Wall, and about half a mile distant from her. The wind was due east, and the speed of both vessels was from 5 to 6 miles per hour. While sailing in this manner, the watch of the Wall discovered ice, as they supposed, on their lee bow, and immediately put their ship in stays to come about upon the port tack. While coming about they exhibited a torch to the Raab, and as she came near, shouted to her to keep out of the way. She came on, however, without changing her course, and a collision ensued by which the jibboom and head gear of the Wall were carried away, as well as the foremast and mainmast of the Raab. On the part of the Wall, it was alleged that the collision occurred while she was in stays, helpless and nearly motionless, while the cross-libel of the Raab charged that the Wall was under headway on the port tack, and that her duty to keep out of the way of the Raab, under the 12th article, had become operative.

H. B. Brown, for the Charles Wall.

W. A. Moore, for the Charlotte Raab.

LONGYEAR, District Judge. In the case of The Sea Nymph, Lush. 23, Dr. Lushington laid down the following rule: "A vessel proceeding in a cause of collision, and alleging herself to have been in stays at the time of the collision, and therefore helpless, is bound to prove in the first instance that such was the fact. The burden of proof then shifts, and the other side must then show that the collision was occasioned by the vessel proceeding being improperly put in stays, or was an inevitable accident." It is undisputed that the Wall did go into stays and came about, and that the Raab did not avoid her. But it is contended: 1. That the Wall was improperly put in stays, and 2, that she had in fact filled away, and was actually under way on the port tack before the collision, and that it had therefore become her

duty, under article 12, to keep out of the way of the Raab.

First. There is no allegation of fault in the answer or cross-libel upon which to base the first-named defense. But even if there were, it is not sustained by the proofs. The course of the Wall, while on the starboard tack, was toward a shoal, and while it is clear that in the absence of any other cause for coming about, she had not run out her tack, it is rendered reasonably certain by the proofs that there was a field of ice in such proximity to that course, if continued, as to justify the master of the Wall in his apprehensions of danger, and in arriving at and acting upon his determination to come about when he did. Neither were the proximity and relative position of the Raab such as to render it improper for the Wall to come in stays, the Raab, by all the testimony, with a single exception, being at least half a mile behind, and from two to three points to the windward of the Wall, affording her ample space, time and means of avoiding the Wall, either by keeping away or coming about herself.

Second. That the Wall had some headway at the time of the collision I think is reasonably certain from the character of the injury inflicted upon the Raab. But whether it was the result of her sails having filled on the port tack, or whether of her not having entirely lost her headway in stays, is not so easy to determine, the proofs being somewhat complicated. But I do not consider it necessary to a decision to determine that point, because, even if it be true that her sails had taken the wind on the port tack before the collision (as to which, to say the least, there is very grave doubt), it was so short a time before, and the Wall had gained so little headway on that account, that it was impossible for her by that means to have avoided the Raab, on account of the nearness to which the latter had then approached, and therefore the Wall had not come within the operation of article 12 when the collision occurred. I regard it of no consequence whether the Wall did or did not exhibit a light just before or at the time of coming in stays, because it is clear to my mind, from the proofs on the part of the Raab, that the Wall's coming in stays was reported to the master of the Raab, and that the latter fully comprehended the situation in ample time to have avoided the Wall. The master of the Raab chose to take the risk of the Wall getting around on the port tack in time to keep out of his way. The result shows he was mistaken. It is not a sufficient answer to this that the Wall was longer in coming about than vessels of her size usually take, as attempted to be shown by the experts, because her slowness does not appear to have been the result of her not being in ordinary trim or of want of good seamanship on the part of those in charge of her navigation. On the contrary, it does appear that she was in ordinary trim, and that her slowness was the result rather of her not being ordinarily handy or quick in coming about, which we have high authority for holding cannot be attributed as a fault. The Argo, Swab. 462; 1 Pars. Shipp. & Adm. 575. In any view of the case, I am satisfied that the master of the Raab was not justified in taking the risk he did. It results that, under the rule laid down by Dr. Lushington, in The Sea Nymph, just quoted, in which I fully concur, the Raab must be held wholly in fault. See, also, The Priscilla, L. R. 3 Adm. & Ecc. 125; The Nellie D. [Case No. 10,097]; Lown. Col. 61. Decree for the Charles Wall.

NOTE. The case of The Priscilla, here cited, was affirmed by the privy council, 1 Asp. 468, note. See, also, The Palatine, Id.